Next case on this morning's docket is Tina Gingrich v. Christina Midkiff, and we have Mr. Charles Chapman for the appellant. We have Mr. Goldenberg and Mr. Ware for the appellees. You may proceed when you're ready to, Mr. Chapman. Good morning, Your Honor. My name is Charles Chapman. I represent Dr. Gingrich, PC, in this appeal for the dismissal of the case based on race to the clad office and over in Cladwell-Stoppa. This case was up on appeal before, but not with regard to any issue involving this, so I'm not going to go into that. We have what I call Case 1, the first case, which is a stock purchase dispute. Case 2 is this case, which is a breach of contract dispute. And Judge Hill ruled that this case was barred and dismissed it. So what I would like to do is explain to you why I think it was wrong. This case started out back in 2002. Dr. Gingrich and Dr. Midkiff – Dr. Freeman is a law professor – Dr. Midkiff and Dr. Freeman were together in a corporation at Gingrich, PC. They came to a parting of the ways and they were not at all happy with one another. Dr. Midkiff filed a lawsuit. Dr. Gingrich filed a response and then filed an election to purchase shares under Section 12.56 of the Business Corporation Act. Under that, it becomes the duty of the court to determine how much the shares are worth. And in making that determination, the court could look at various things, and the court in this case did. After a passage of years, Dr. Gingrich and Dr. Midkiff came to an agreement on what issues would be decided by Judge Mendelson, and he adopted an agreed pre-trial order, which is in the appendix to our brief. And I think it's important to consider that, at least for a few moments, because it delineates what that first case was about. And that's important in deciding what this case is about. So, first of all, if you look at the agreed pre-trial order, there are about, and it depends on how you count, there are about 30, somewhere between 30 and 35 posed questions. It's about a five-page order. There's one one-and-a-half-line question about restrictive filing. And the language that's contained in that agreed pre-trial order is important with regard to the restrictive covenant, because what the language says is to, quote, whether a covenant not to compete shall be imposed on the selling shareholders, and if so, the scope of the restrictions to be imposed. Now, if it's our position, and I think it's clear from the agreed pre-trial order, from the statements of Mr. Goldenberg at the trial, from the statements, or the written statements of Judge Mendelson when he ruled on this, that everyone was focusing on whether or not a restrictive covenant should be imposed in that case has an additional part of the purchase price of the shares to be sold under 1256. The phrasing of the language in that order is important because it says whether a covenant, if they were talking about the covenant, the contractual covenant, which is involved in this case, they would have said whether the covenant. Equally important is selling shareholders. The selling shareholders are important in the context only, only if you're looking at it under 1256. The scope of the restrictions to be imposed is important only if you're creating a non-compete, because otherwise, if you're looking at the contractual non-compete, that's set forth in the contract. So the language itself of referring to the covenant shows that it was dealing with the covenant under 1256. The next thing that should be looked at in this regard are the comments of Mr. Goldenberg on behalf of Dr. Bifkin. It's actually on page 2, I think, of our reply, maybe in the opening brief also. But Mr. Goldenberg has repeatedly said, and I'll just give you a couple. This is a quote from his comments. As far as Dr. Bifkin's position on this covenant, Your Honor, so you're understanding the argument, this is not a contract case. This is a 1256 case. That's a huge difference. He also said, this statutory non-compete is, quote, a discretionary decision of the court in a whole universe of things you can consider if you elect even to consider them. And finally, furthermore, as Dr. Gingrich has acknowledged, Mr. Goldenberg says, this is not a contract action, and Dr. Gingrich is seeking a purely discretionary restricted covenant under 1256 as an additional term of her purchase of Dr. Bifkin's shares. So those are some of the quotes from Mr. Goldenberg's position at trial. Unless you think that just, you know, someone got carried away and defeated the battle and said these things and didn't really mean them. He also said similar things in his post-trial motion. Quote, as Dr. Gingrich has acknowledged, this is not a contract action, and Dr. Gingrich is seeking a purely discretionary restricted covenant as an additional term of her purchase of the shares. Again, of course, this has been stressed. This is not a contract action, but rather a 1256 action, and fair value is determined as outlined in the statutes. And as a matter of fact, there was a stock purchase agreement that the two doctors had drawn up for themselves. As Judge Mendelson alludes to his order, he didn't really even have to look to that contract and that stock purchase agreement in his determination of value of the shares. He did look at it because the parties had presented evidence on it. But as far as under 1256, if there were no stock purchase agreement, the parties come in and say, Judge, we're at loggerheads. We want, you know, one person has agreed to purchase the shares. We want you to determine the value. He determines the value from the elements set forth in 1256. He doesn't have to have to agree. If he has one, he can look at it. He doesn't have to follow it. He makes a determination on what that value is going to be. And he can also, if there were no restrictive covenant in the agreement, he can create it. If there was a restrictive covenant in the agreement, he can ignore it. It's all up to him. It's all dealing with the value of the shares. There was evidence presented and argument made at the hearing in front of Judge Mendelson about the non-compete. Yes. About the discretionary, in your opinion, non-compete. Yes. Oh, yeah. And he and his ruling decided not to and held that he would not impose restrictive covenant under 1256. Could that order or that ruling have been appealed? Yeah, that ruling could have been appealed. And it wasn't. You're saying that that doesn't preclude you now? No, because it doesn't touch on what we're seeking here, which is not anything under 1256 as a value of the shares. On the value of the shares, let's suppose Judge Mendelson says, I'm going to, Dr. Gingrich, you're going to pay X dollars for the shares. You don't get a restrictive covenant. Or he says, I'm going to make you pay, I'm going to say the value of the shares is 10X, but you get a restrictive covenant. So whether or not a restrictive covenant is imposed as a part of the valuation of those shares is a completely different issue as compared to whether it's a proper remedy under breach of contract action when the contract is a breach. There's no question the contract wasn't even breached at the time of this hearing. Well, Mr. Chapman, does it make any difference that procedurally your actions were brought as a counterclaim? No. It could have. Okay, explain that to me now. The reason it doesn't is because, and another question that's raised in the brief is under restrictive covenant, any claim that could have been raised is barred as well, and that sort of goes to that issue. The reason it doesn't is because the parties, not Dr. Gingrich alone, the parties agreed on their agreed pretrial barter, this is what this case is going to decide. And what that case was going to decide was the value of the shares, and if you look at the brief, it's very detailed. It's got, look. Did the agreement say that they were reserving the right to pursue the covenant not to compete for another day? The agreed pretrial barter did not address that. Dr. Gingrich, in a pleading, I think in a post-trial motion, indicated that she was. There was no response to that in the reply. That was never contested by anyone during the arguments on the post-trial motion or any pleadings on the post-trial motion. It was not specifically addressed in the agreed pretrial barter. The order at page four says, this is the judge's, Mr. Mendelson's order, says the stock purchase agreement entitled covenant not to compete contains entirely different restrictions. Dr. Gingrich is not seeking to enforce that covenant not to compete contained in a party stock purchase agreement. They didn't say at this time. No, sir, that's exactly right. That's my next point. In other words, it's not only Dr. Gingrich and Dr. Vicka that agree in the agreed pretrial barter that they're not going to litigate the restrictive covenant contract. That's exactly what Judge Mendelson just said. It is? Yeah. That's what he's saying. Let me give you a couple of other examples. The court also said this court concludes that the imposition of a covenant not to compete is not warranted here. That's right. Right. That's again as a part of the stock purchase. Stock purchase. But he doesn't say that. If he just said as part of the stock purchase, then this would be pretty clear. Okay. Which page are you on? I'm on page eight. Page eight of the order. Of the order. This court concludes that the imposition of a covenant not to compete is not warranted here. And he doesn't say as part of the stock purchase. Which page are you on? It's page eight of 13. It's C45. Okay. First paragraph at the top. Yeah. Last sentence. Yeah, but go on, Judge. What he says, this court has conducted a thorough and independent inquiry into the facts and circumstances presented by this case to determine whether a covenant not to compete is warranted. Is warranted. And that's where you stop. That's where the brief stop. But that's not where Judge Mendelson stopped. And he goes on and says, that's what I said, and should be imposed as an additional term and condition of the stock purchase agreement. That's what I'm talking about. In other words, their brief in Dr. Mankin's brief, and I think it's on page eight of their brief, but I'm not sure. They stop the quote of Judge Mendelson's order at warrant. And that's not correct. He goes on to say, just what I've been saying. This was clear about devaluation. Going back to Judge Mendelson's order. This is on page two of his order on A9. Quote, this is not a contract but rather the section 12 of the contract. On page four of the order, A11. Dr. Gensink's asking this court to impose a restrictive covenant by Dr. Minkus as part of the stock purchase. Page four of the order, A11. Dr. Gensink is not seeking to enforce that covenant not to be contained in the part of stock purchase agreement upon a breach of contract theory. So Judge Mendelson is saying specifically that that was not what was sought in that case. And then what happens? In this case, Dr. Minkus admits that the breach of the covenant not to compete did not occur until after Judge Mendelson entered the order January 25, 2007. So the restrictive covenant in the contract could not have been a part of this. So what happens? The order's entered. The shares are sold and paid off and so forth. And Dr. Minkus then, it's no longer worth operating under Gingrich PC, starts operating, although she may have been seconded, she now starts operating on home. Breaching the covenant not to be within the contractual covenant not to be. Lawsuit is brought. The case is not opened by Judge Mendelson for whatever reason, because they reassigned associates. And it goes to Judge Hill. So the motion is filed by Dr. Minkus. There's hearings. Judge Hill wrongly rules that the breach of contract restrictive covenant issue was decided. And it just simply was not. It was a completely different issue. Was there evidence about it? Yes, there was. You're saying just in the context of valuing, that you have the stock that's going to be valued? Absolutely. Absolutely. I was trying to give an analogy. This may not be the best one, but it's the best one I could come up with. If you had a case, a trial, and let's say it's a person of your case and there's a release plan. And the parties come in to the judge and they say, Judge, this case has got a lot of medical. It's got a lot of issues. But this release issue is fairly simple. And rather than spending a lot of money and time and discovery, we've agreed to have you decide the release issue. And if that release issue, if you decide the wrong way, well, then that's it. You know, blah, blah, blah. So they enter an agreed pre-court order that that's what the judge is going to decide. The judge says, Okay, that makes sense to me. That's what I'll decide. They present evidence. And let's say they present some evidence on a liability question because the judge needs to hear that and determine whether the release is about some issue on the medical because the judge needs to know what the injury is and determine whether the release paid enough or whatever. And then evidence on the release and how it was entered into and the condition of the plaintiff and so on and so forth. And the judge says, No, I'm not going to go in your favor on the release. And the plaintiff says, Okay, judge, I'm ready to proceed now, you know, after discovery on the actual case. And the defendant comes in and says, Wait a minute. Wait a minute. This is a great speed of time. We had this release. We heard evidence. You heard evidence about the liability. You heard evidence about the medical. And that all could be presented. The judge is going to say, Wait. Wait. You agreed to limit the hearing as to the release, in this case, the value of the shares. And that's what I decided. And that's what Judge Mendelson says he decided. That's what Mr. Goldenberg said was being decided. And that's what they agreed to have decided. So I want to further expand that. I didn't go into the law. The law, in essence of a transactional analysis, is whether or not the cause of actions arose from the same set of operative facts. And if you look at the agreed pre-trial order and the facts that are determined under that, just the value of the shares, whether or not a covenant should be included in that valuation, office rental, outstanding receipts, equipment, patient list, blah, blah, blah, blah. It goes on. There are 30 to 35 questions. Nothing about the contract. I mean, Judge Mendelson considered the contract. He specifically said, I think on page 2 of his order, I don't need to look at the stock purchase agreement. I will, and I'm going to because the parties do have a voice. The issues in this case are, was there a contract? Was there a restricted covenant in the contract? Was that restricted covenant breached? Are there damages? None of those. None of those were involved very, very briefly on the value of the shares in the first case. So we have a stock purchase evaluation. We have a breach of contract. And Judge Hillel, with all due respect, he's a fine judge. He got it wrong. So he has to be reversed. Thank you. Thank you, Mr. Chapman. Go ahead. Is the record, in your opinion, absolutely clear that the judge knew what your agreement was and that each of the parties and their attorneys knew what the agreement was? Because it's not clear to me, as it is to you, that they were only going on the 12.56 statutory and not reserving or reserving, as you want to do, the contractual covenant not to be breached. That's the whole thing. We have to get into the minds of the parties and the attorneys. And we can't do that. All we have is the paper. Well, but what you have in the paper, Judge, is quite a bit. But did the judge agree? Yes, he did. They presented a brief pre-trial order, and Judge Nelson signed it, approving that. We have the statements in addition to, you know, it's quite clear what Dr. Gingrich's position was. You know, I mean, it's true. Both sides are saying this is not a contract. So there was no election made to pursue only the 12.56? Yes, there was an election. It was an election by both. It was an election by Dr. Gingrich saying I'm going to, you know, if there is an election at 12.56, on the stock purchase, clearly that's an election. But then when you do that evaluation, there's all kinds of things. And Judge Nelson's order specifically says on the brief pre-trial order, this agreed pre-trial order supersedes all other things. So, you know, that way we narrowed it down and everybody knew. Let me ask one other question. Sure. In your contract action now, does the other side have maybe not an affirmative defense, a quasi-affirmative defense because the courts already presumably compensated your client for the lack of an enforcement of the non-compete clause by giving a higher award for the value of the shares of the stock? No. They have some type of an affirmative defense to it? No, because this wasn't, this didn't deal with it. The case one dealt with what is the value of the stock. I mean, well, as far as your, I mean, it's probably not before the court now, but as far as your claim for damages, how are you damaged if the court's already taken this into consideration, presumably when it assigned a value for the shares of stock? Oh, okay. Well, okay. One of the cases, I think it's a NOAC case that Judge Harrison wrote. I think that's the one. In that particular case, retrospective as opposed to prospective, and that case fits this case exactly. I think it's the, I think it's, you know, at St. Rosa High School there's a teacher who didn't get tenure, and they tried to say that his claim under the ADA and American Disability Act warranted a claim on a tenure basis. And Judge Harrison, I'm pretty sure, said, talked about retrospective and prospective. And that's what this is. The retrospective portion of this case was evaluation of the shares at the time that Judge Mendelson resorted and Judge Henderson. But presumably Judge Mendelson's already taken into consideration the fact that the defendant's going to be practicing in the same area now and therefore awarded a higher portion for the evaluation of the shares of stock, right? No, no. No? No, no. Because the breach of the contract had not even occurred at that point. Couldn't occur. They're still operating out of Cambridge, B.C. So the breach of the contract, as they admit in their post-trial motion, the breach of the contract contains… Well, by not enforcing a discretionary non-compete, Mendelson didn't presume that the defendant was going to be practicing in the same area? No, I'm sure he did. So presumably the value of the stock would go up then, right? It might or it might not. Unfortunately, we don't know specifically. Judge Mendelson, in his order on the stock, says what we just talked about earlier, I'm not going to impose a restricted felony as an additional element, blah, blah, blah. But he doesn't detail. I gave you an example of she pays X dollars if she gets covered, she pays 10X if she doesn't, or vice versa. That's not detailed at all. But, no, if Judge Mendelson had entered a non-compete, pursuant to the statute, Judge Mendelson says, okay, I'm going to, it's X dollars and as a condition of an evaluation of the purchase price, I'm going to say to you, Dr. Victor, you can't practice for a period of one year, within two months, or whatever he says. And that's part of the valuation. An actual creative under 1256, that would not bar Dr. Gingrich from asserting her rights under the contract. No, I realize that. I'm just saying that as far as your measure of damages in the present contract actions, it's not really before us now, but that they would have, the amount of damages claimed has already been, to a certain extent has already been taken into consideration by the fact that Judge Mendelson did not enter a discretionary non-compete. I don't want to get in a fight over an issue. It's not before us. No, I don't agree. Okay. Thank you, Mr. Chapman. You'll have the opportunity to rebut. Mr. Goldenberg, I think you're chomping at the bit. No, I'm not. I'm not. Good morning, Justice Chapman. Good morning. Good morning, Justice Wexler. Good morning, Justice Comer. I'm not chomping at the bit, and I'm ready to go. Good morning. In this case, clearly both branches of res judicata apply here. Judge Hill had carefully considered that. He so founded in his motion to reconsideration, and with all due respect to Mr. Chapman, Judge Hill had got it right. He got it right. Res judicata applies here. The first part of res judicata, not claro estapa, which I'll refer to as the issue preclusion branch of res judicata, is intended to bar relitigating the cases where the same group of operative facts apply, even if they try a different theory under what is a different label for their cause of action. The purpose of res judicata is to promote judicial economy by requiring the parties to litigate, in one case, all rights out of the same set of these operative facts, and also to prevent an unjust burden that would result if the party had to do it again. I can tell you when this case started in 2002 and we're trying it in 2006, they had no agreement from me that that wasn't the end of it. We'd been up to the appellate court on an issue of the formula on the application of this, and we thought it was over. As a matter of fact, these doctors actually separated their practices in 2005. Dr. Minkoff goes over and practices on automobiles. Dr. Gingrich goes over and remains practicing on pedalogy in Rome. And then when this case is tried in 2006 and the order is under advisement, they agree that in effect of 1231-06, before Judge Middleton's order comes out, that's the end of the corporation, and you're on your own or we're on automobiles after that date, and I'm on my own after pedalogy. Is it clear in the pre-trial order what was being litigated? Did it say the language, and no one is pursuing the covenant not to compete? This is only a 1256 action. No. What was before the court, Justice Wexton, is whether or not to impose a restricted covenant between these two doctors. And that's where we get into collateral estoppel. It plays directly into that, because that's issue preclusion, because whether you label it a 1256 action or whether you label it a breaching contract action, Justice Fulmer, you're right. The court heard all kinds of evidence. The court heard evidence that said Dr. Gingrich has an unfettered opportunity to develop as much business as she can. All she's got to do is get the providers there to provide it. They heard testimony on another issue that's relevant to enforcing a covenant not to compete under any label, which is did she have an expected permanent relationship with the customers or the patients she was trying to protect? And she admits all of the patients were Dr. Midkiff's, and she expected after the split all of the patients would remain with Dr. Midkiff. She argued about hospital capacity. Keith Page from Oliver Anderson Hospital testified. Judge Middleton heard evidence on this issue that was other about it, that Anderson Hospital not only wanted to retain all their OBGYNs, but that they had a strong public policy to try and recruit more OBGYNs into the practice area, and they were expanding the hospital. He heard evidence on that. He heard evidence on was there any trade secret that had to be protected by a restricted covenant, and he found out that there was none, that Dr. Midkiff knew how to be an OBGYN before she joined Dr. Gingrich. And the relevance of that evidence was to establish the value of the shares of the company, right? The evidence, those issues were really relevant to the issue of whether or not a covenant not to compete could be enforced under any label or under any circumstances, because just because you have a contract that says there's a covenant doesn't mean it's enforceable. How would the wishes of a hospital have anything to do with the contractual covenant not to compete? Well, I think that public policy is always an issue, even under a contractual covenant not to compete. If there's a strong public policy that says we want doctors, we're not only going to retain all our doctors, there's a strong public policy to recruit doctors, and there's a strong public policy because we're expanding our hospital. I think public policy is always relevant, even under a contractual covenant not to compete. So you're saying that may be a defense to the enforcement of a contractual covenant not to compete because of public policy against those types of contracts? Is that what you're saying? That's right, and Judge Middleton still found that. He considered the issue of public policy and said public policy factors outweigh any reason to enforce the restrictive covenant. So all of those issues that were relevant to enforcing a covenant not to compete or imposing a covenant not to compete have been presented to the court. Judge Middleton heard evidence over a multi-day trial on all of these issues, and he found that there should be no covenant not to compete between these two doctors, and that's why you have race judicata and collateral estoppel, so you don't go back and re-litigate these same issues. You don't go back and have another judge, potentially in the same courthouse, finding inconsistent rulings with Judge Middleton who said there's no protectable interest here, there's no reasonable basis for a less restrictive covenant not to compete. Public policy factors outweigh the imposition of any covenant not to compete in this situation. For them to go back and re-litigate all these issues again would be... There's no answer on file on this case yet, is that right? That's correct. Okay, so we don't know what all your affirmative defenses would be should it get to that point. Should it get to that point. You're right, and there would be affirmative defenses along this line. I'm going to answer your question for you, Justice Fulmer. Dr. Middleton has stock in Maryville Women's Center Inc. or Dr. Bingridge MDPC. She has stock in it, and if her value in the stock is definitely in stock, whether this corporation has a covenant not to compete going forward or it doesn't have a covenant not to compete going forward, her share value would be higher if the corporation had the benefit of a covenant not to compete. If it was reasonable, it should be granted. So I think it's clear that that would have to be... If you retry the issue, then we need to go back and retry the issue of the value of the shares if there's going to be a covenant imposed on this. Mr. Goldenberg, did the court have complete discretion as to whether or not they even wanted to consider the covenant not to compete in the valuation of the stock? Well, I think the court, I think 1256 says that the court can impose other terms of the sale of the contract as it deems important. And the reason why I'm posing this is what if the court did not consider it at all? If the court did not... A contractual covenant. Well, if the court had not considered the issue of the covenant at all, then you wouldn't have had these issues which take us into collateral estoppel and issue preclusion because it wouldn't have ruled on issues like protectable interest, reasonableness of the covenant, public policy, trade secrets, client protection, business generation. So if it hadn't considered this covenant not to compete and... So it's clear. We filed a... But it did consider it in evidence, full evidence. The majority, a great majority of the evidence was on this issue of whether or not a covenant not to compete was reasonable under any circumstances. Let me ask you this. It did not have to be. The court could have said, I'm going to just determine value. I'm not going to consider a covenant not to compete anymore than it can consider. I'm going to order you to pay $10. I'm going to let you pay $5 now and $1 a month for six months, whatever. So that could have been another term they could have considered. But it didn't consider. Could you comment on the issue raised by opposing counsel? In his brief, he says as far as, and he's quoting counsel for Dr. Mitkiff, as far as the doctor's position on the covenant, Your Honor. So you're understanding the agreement, this is not a contract case. This is a 1256 case. Exactly what was meant by that statement, that this is not a contract case? Well, first of all, it wasn't a contract case because... What's the relevance of that statement? How does that fit into your position? As it turns out, I misspoke when I said it was a huge difference because in reality, once the court considered all of the issues which are relevant to a covenant under 1256 or under a contract action, there was no difference there. So it was clear it wasn't a contract case. It could have been a contract case just as Chapman pointed out in their counterclaim. They filed a declaratory action to say we wanted to pursue a declaration that the covenant not to compete was enforceable and could be enforced on her. That was not presented as part of the agreed pretrial order. It's not our burden. We're not the ones seeking the covenant not to compete. It's not our burden to say, court, we want you to consider this because we weren't the proponents that were seeking the covenant not to compete. So... So essentially you're saying that they waived their right to proceed on their counterclaim. Is that what you're saying? Well... They kind of merged it? It all got merged into the agreed pretrial order, but they certainly had the right to, if they wanted this, they could have certainly put in the agreed pretrial order. We want you to also consider whether or not our contractual covenant not to compete is enforceable. They could have put that in the agreed pretrial order, and the court could have considered that, and they certainly argued. Had the parties already separated at that time? The parties were all part of the same corporation until the trial in late 2006, but they had in de facto separated because Dr. Mitchell moved to Automo's facility in June of 2005, and Dr. Gingrich continued to practice the fidelity in 2007. Well, I guess the better way to ask the question, could they have brought a contractual action to enforce the covenant not to compete at that particular time? They could not have because they could have brought it in the form of a declaratory judgment action, but she was still operating as part of Maryville Women's Center PC at that point in time. So hopefully that answers your question. So I think, again, it's clear under race judicata that under both arms of race judicata, certainly clearly under collateral estoppel or issue preclusion, this case has been tried. It's out of the same operative facts, and the court has already ruled, Judge Middleton ruled on this. Judge Hill, on his motion to reconsider, fully analyzed the issue of both arms of race judicata, which is the same action theory as well as the collateral estoppel issue preclusion, and he determined that the case should be dismissed, and we agree with that decision, and we think he got it right, unless the court has further questions. What would be the meaning of the judge's statement in his order on page 4 that the stock purchase agreement entitled covenant not to compete contains entirely different restrictions? Well, there's a couple things. They argued, Justice Wexler, they argued when they were seeking this 1256 restricted covenant, they certainly argued the contractual covenant not to compete language as a reasonable expectation of the parties and presented that, then they came along and said, and here we're the good guys, we're seeking an even less restricted covenant under 1256 than we would have under the contract. So they put that evidence all in front of Judge Middleton on a less restricted covenant not to compete, and I would argue that the collateral estoppel or issue preclusion argument is even more compelling if now they're coming in and trying to enforce a more restricted covenant not to compete than the one that the judge determined was contrary to public policy. There was no projectable interest, and there was an unfettered opportunity to do as much business as she wanted. There was no hospital issue. The hospital wanted more power to the patient. There was no permanent relationship with the patient. So I think it's relevant because if a less restricted covenant not to compete couldn't pass the test that have to be met, the issues that have to be decided in enforcing a covenant not to compete, a more restricted covenant not to compete would have a less chance of passing those issues or prevailing on those issues. Thank you, Frank. Thank you, Mr. Goldwater. Thank you. Mr. Chapman, rebuttal. Do we have anybody here for a rebuttal? Yeah, we do. Really? You can't or not. No, go ahead. No, we didn't expect it to happen here. First of all, as for what was presented in the pre-file order, coming out of the plaintiffs and the defendants, the agreed pre-file order, they have to submit this agreed pre-file order. The following are issues of law and facts to be tried in this action, and this order shall supersede the pleas and on file here again. The parties agreed to limit it to the valuation of the purchased shares. I think, Justice Bomer, you asked him about this huge difference, and he said I misspoke. Well, he misspoke five times before me, and he misspoke four times in his post-file motion about what was being presented. He said today, he said just right after that, he said it was not a contract case, and it was not a contract case. Oh, I think, Justice Edmund, you asked him something about it was just some sort of a waiver because they agreed to the pre-file order, and I don't remember his response. I don't think he actually said yes. There was no waiver in this pre-file order. If you look at the pre-file order and compare this pre-file order in determining the operative facts of deciding the stock purchase dispute and compare that to the only thing you had before you in the breach of contract is our complaint, which is straightforward. It says there's a restricted covenant, there's a breach, damages, and other relief. They are worlds apart. They are not the same operative facts under any stretch of the imagination. He, Mr. Goldenberg, admitted and I believe it just before you that the parties were still part of the same corporation until Judge Nelson's order of January of 07. And so until that time, there could not have been a breach of the contractual restricted covenant. It was only after everything that took place in the stock purchase agreement is bolded and Judge Nelson enters his order that there could even be a breach. So when he says they're the same operative facts, I invite you to look at the facts that were to be decided under the re-pre-file order and look at the facts alleged in the complaint and determine whether or not the same operative facts are presented in both cases and they simply are not. We ask for a reversal and for these parties to be allowed to proceed. Thank you very much. Thank you, Mr. Chet, Mr. Goldenberg, Mr. Rarick. We'll take the matter under advisement.